IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

ASTANZA DESIGN, LLC,              )
                                  )
                Plaintiff,        )
                                  )
        v.                        )          1:16CV1238
                                  )
GIEMME STILE, S.p.A. and          )
GIEMME USA, LLC;                  )
                                  )
                Defendants.       )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff Astanza Design, LLC ("Astanza") seeks to confirm an arbitration award against Defendants Giemme Stile, S.p.A. and Giemme USA, LLC arising out of a contractual relationship among them. (Doc. 3.) Defendants oppose the motion and move to vacate, modify, or correct the award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10. (Doc. 11.) The issues are fully briefed and ready for decision. For the reasons set forth below, Defendants' motion will be denied and the arbitration award will be confirmed.

## I.    BACKGROUND

This action arises out of a dispute between the parties as to the interpretation of a March 1, 2011 Representation Agreement (Doc. 12-2) whereby Plaintiff was to serve as the exclusive representative for sales of Defendants' furniture to the Church of

Jesus Christ of Latter-Day Saints ("LDS Church"). (Doc. 6-1.) At some point, the LDS Church sought to deal directly with Defendants, thus reducing its cost by eliminating the commission owing to Astanza. (Doc. 3-1 at 7-9; Doc. 12 at 4-7; Doc. 16 at 3.) Defendants acquiesced to that arrangement, and Astanza objected. (Doc. 3-1 at 7-9; Doc. 12 at 4-7; Doc. 16 at 3.) After unsuccessful discussions, Astanza submitted a petition for arbitration pursuant to the terms of the Representation Agreement, which provided that any disputes would be addressed by the International Centre for Dispute Resolution (the "ICDR") and its Rules of Procedure. (Doc. 12-2 at 8, ¶ 13(C).)

The arbitration proceeding was comprehensive. The parties participated in mediation, amended their filings, conducted discovery, held hearings, and had a final arbitration on June 6 and 7, 2016. (Doc. 3-1 at 1.) Thereafter, the arbitrator directed the parties to submit briefs on certain issues, including Astanza's claim for attorneys' fees. Responsive briefs were also filed. The record was closed on July 8, 2016, and on August 16, 2016 (following an agreed upon extension), the arbitrator issued his Final Award (the "arbitration award"). (Doc. 3-1 at 1-3, 16.) The arbitration award found that Defendants breached the Representation Agreement and awarded monetary damages against them, jointly and severally, of $15,065.01 in unpaid earned

commissions and interest; $44,554.00 in lost future commissions; $86,447.10 in attorneys' fees; and $19,737.50 in fees and costs of the arbitrator, with 8% interest. (Id. at 15.) Post-arbitration motions of the parties to modify and clarify the award were denied. (Doc. 16-13.)

Astanza filed its motion to confirm the arbitration award in the North Carolina General Court of Justice, Superior Court Division, Guilford County, on September 21, 2016 (Doc. 1-1 at 2-4) and amended the motion on October 14 (id. at 31-35). Shortly before a scheduled hearing to confirm the arbitration award (Doc. 16 at 5), Defendants removed the action to this court based on diversity jurisdiction. (Doc. 1.)

In this court, Astanza quickly moved to attach Defendants' assets in North Carolina, and Defendants resisted. The court issued an order of attachment on November 18, 2016, and amended the order on December 8, 2016. (Docs. 15, 22.) Meanwhile, Defendants moved to vacate, modify, or correct the arbitration award. (Doc. 11.) Defendants' challenge is directed to the arbitrator's award of attorneys' fees, as to which Defendants contend the arbitrator lacked authority to enter and nevertheless was not reasoned.[1] (Doc. 12 at 8-11.) Astanza argues that the

---

[1] At a status hearing on December 12, 2016, Defendants conceded, as the record demonstrates, that their briefing has not addressed the compensatory portion of the award. Thus, Defendants' general prayer for

arbitrator was vested with authority to enter an award including attorneys' fees and that Defendants both waived any objection to, and invited, the decision. (Doc. 16 at 7-16.)

## II. ANALYSIS

### A. Motion to Vacate, Modify, or Confirm Arbitration Award

The arbitration award was entered in this district, and the court has subject matter jurisdiction over the dispute.[2] 28 U.S.C. § 1332. Therefore, removal to this court was proper. 9 U.S.C. §§ 9, 10, 11 (authorizing federal court in district where award entered to enter order confirming, vacating or modifying award).

The Fourth Circuit has recently reiterated that the scope of judicial review of an arbitration award "is among the narrowest known at law." UBS Fin. Servs., Inc. v. Padussis, 842 F.3d 336, 2016 WL 6871906, at *2 (4th Cir. 2016). Courts may modify, vacate,

---

relief to vacate the complete award is unsupported by any argument and will be denied. See L.R. 7.2(a).

[2] Astanza is a limited liability company organized under the laws of Colorado. (Doc. 1 at 2.) Its managing member is Pemaquid, LLC, also a Colorado limited liability company, whose managing member is James M. Sweet, a citizen and resident of Colorado. (Id.) Defendant Giemme Stile, S.p.A. is a for-profit Italian corporation, organized and existing under the laws of Italy, with a principal place of business in Vicenza, Italy. (Id.) Defendant Giemme USA, LLC is a North Carolina limited liability company whose members are Bentonvest, S.A., a Luxembourg corporation, and Furniture Showroom Properties, LLC, a North Carolina limited liability company whose members are Roberto Molon, a citizen and resident of One di Fonte, Italy, and Bentonvest, S.A., a Luxembourg corporation. (Id.) Thus, the parties satisfy the diversity requirement, and the amount in controversy exceeds $75.000. 28 U.S.C. § 1332; Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 121 (4th Cir. 2004) (limited liability company "citizenship is that of its members").

or correct an award only under the limited circumstances set forth in the FAA, 9 U.S.C. §§ 10-11, "or under the common law if the award 'fails to draw its essence from the contract' or 'evidences a manifest disregard of the law.'" Id. (quoting Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006)). The court's duty is "to determine whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it." Id. (quoting Three S Del., Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007)).

In determining whether the arbitrators acted within their authority, the court is permitted, therefore, to determine whether the arbitrators "exceeded their powers," 9 U.S.C. § 10(a)(4), and in pursuing this inquiry may decide whether the parties agreed to arbitrate a particular dispute. AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 651 (1986). However, "[a]n arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion, and may only be reversed when arbitrators understand and correctly state the law, but proceed to disregard the same." Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991) (citations omitted). Apart from these fundamental questions of arbitrability, courts must

defer to the arbitrators as to the merits of a dispute and any procedural questions arising from them, even if they bear on the final result. UBS Fin., 2016 WL 6871906, at *3. To do otherwise "would frustrate the purpose of having arbitration at all." Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998).

The Supreme Court has said that a party seeking relief under § 10(a)(4) of the FAA bears "a heavy burden." Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." Id. (citations omitted). Any doubt concerning the scope of the arbitrable issues or the arbitrator's remedial authority must be resolved in favor of the arbitrator. Three S Del., 492 F.3d at 531.

Here, Defendants' challenge is limited to the arbitrator's award of $86,447.10 in attorneys' fees.[3] Defendants argue that the arbitrator exceeded his powers in reaching the fee issue. (Doc. 12 at 8.) According to Defendants, the arbitrator

---

[3] Astanza argues that Defendants have waived their right to appeal the arbitration award in its entirety because the ICDR Rules prohibit judicial review of awards. (Doc. 16 at 7; Doc. 16-14 at 33.) Because the court finds that Defendants' arguments fail on the merits, it need not address this argument.

disregarded the terms of the Representation Agreement, which was the subject of the dispute and which Defendants contend was silent on the issue of attorneys' fees and costs. (Id. at 8-11.) Defendants also contend that the arbitrator manifestly disregarded the law, pointing to Astanza's reliance on North Carolina's Uniform Declaratory Judgment Act, N.C. Gen. Stat. § 1-263, which has recently been construed as not creating an independent grant for an award of fees. (Id. at 13-14.) Defendants request that the attorneys' fees dispute be submitted to a new arbitration tribunal or, alternatively, that this court modify and correct the award to eliminate any fee recovery. (Doc. 10 at 3-4.)

The parties agree that arbitration of their dispute and the Representation Agreement are to be governed by the terms of the Representation Agreement, the FAA and ICDR procedures, and North Carolina law. As to the contract, the FAA requires courts to enforce privately negotiated agreements "in accordance with their terms." Volt Info. Scis. v. Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989). "The terms of the contract define the powers of the arbitrator." Solvay Pharms., Inc. v. Duramed Pharms., Inc., 442 F.3d 471, 476 (6th Cir. 2006). These are of course supplemented by the rules and procedures of the ICDR and applicable law.

Section 13 of the Representation Agreement provided the

remedies of the parties. It declared that any dispute between the parties "shall be referred to arbitration under the American Arbitration Association ("AAA") International Center for Dispute Resolution (ICDR) Rules of Procedure." (Doc. 12-2 at 8, ¶ 13(C).) The parties retained "all rights and remedies available at law or in equity, including the right to damages"; provided, however, that "[n]either party shall be liable to the other for any consequential or incidental damages or punitive damages arising from any default under this Agreement." (Id. at 8, ¶¶ 13(A), (B).) Defendants argue that the absence of any reference to attorneys' fees, as well as the express inclusion of attorneys' fees in section 8 of the Representation Agreement addressing certain indemnifications, means that the parties never intended to submit the attorneys' fee issue to the arbitrator. (Doc. 12 at 16.) As Astanza correctly points out, there are several flaws in this position.

Importantly, the parties' contract expressly declared that all disputes would be resolved by arbitration under the ICDR Rules of Procedure. (Doc. 12-2 at 8, ¶ 13(C).) Article 34 of the Rules of Procedure provides that the arbitral tribunal "shall fix the costs of arbitration in its award(s)." (Doc. 16-14 at 35.) That Article proceeds to itemize the covered costs, which include the expenses and fees of the arbitrators (Article 34(a)) – which

Defendants do not contend are precluded by the Representation Agreement – and "the reasonable legal and other costs incurred by the parties" (Article 34(d)).  (Id.)  Courts have held, as the arbitrator in this case concluded (Doc. 3-1 at 14), that this provision grants arbitrators independent authority to award attorneys' fees.  See, e.g., Stemcor USA, Inc. v. Maracero, S.A. DE C.V., 66 F. Supp. 3d 394, 400-01 (S.D.N.Y. 2014) (refusing to disturb attorney fee award where the parties' agreement to abide by the ICDR Rules of Procedure created, at most, an ambiguity and the arbitrators' decision to award them was "at least reasonable, and certainly 'barely colorable'" (citation omitted)); DigiTelCom, Ltd. v. Tele2 Sverige AB, 2012 WL 3065345, at *5 (S.D.N.Y. July 25, 2013) (finding, as to arbitrators' attorney fee award under Article 31 (predecessor to Article 34), that "[t]here is nothing to suggest that the Tribunal's award was even inconsistent with the ICDR rules, much less that it constituted a 'manifest disregard' of the law"); F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc., 730 F. Supp. 2d 318, 330-31 (S.D.N.Y. 2010) (rejecting challenge to arbitrator's authority to award fees on the grounds that "ICDR Article 31 [now 34] plainly allows for attorney's fees and costs to the successful party"); Apache Bohai Corp., ODC v. Texaco China B.V., No. H-01-2019, 2005 WL 6112664, *23 (S.D. Tex. Feb. 28, 2005) (awarding attorney fees under Article

9

31 (now 34) and rejecting contention that the American Rule is incorporated into the ICDR Rules of Procedure).

As Defendants point out, it is true that Astanza cited North Carolina's Declaratory Judgment Act to the arbitrator as additional authority for the award. But the arbitrator eschewed any reliance on it in favor of his authority under the ICDR. (Doc. 3-1 at 14 n.2.) Therefore, the North Carolina Court of Appeals' recent decision finding that the statute does not create a right to attorneys' fees, Swaps, LLC v. ASL Props., Inc., __ N.C. App. __, 791 S.E.2d 711 (2016), is irrelevant, and Defendants' objection on this basis is meritless.

Defendants argue that the arbitrator misconstrued the Representation Agreement's provisions, based on the fact that the indemnification section addressed attorneys' fees and the pertinent remedies section did not. (Doc. 12 at 16.) Defendants argue that this is "strong evidence" that the parties chose not to provide for a fee award in this case. (Id.) This misses the point entirely. The parties bargained for the arbitrator's construction of their agreement, and the arbitration award, "'even arguably construing or applying the contract' must stand," regardless of this court's view of its merits. Oxford Health Plans LLC, 133 S. Ct. at 2068 (citations omitted). The arbitrator did not stray from his task of interpreting the Representation Agreement, which

he concluded incorporated the ICDR Rules of Procedure. The arbitrator's award drew its essence from the contract and was far from a manifest disregard of the law. DigiTelCom, Ltd., 2012 WL 3065345, at *5 (finding nothing to suggest fee award was inconsistent with the ICDR, much less constituted manifest disregard of the law). Even if the Representation Agreement was ambiguous in this regard, Defendants' overture to lenity against Astanza as its author (Doc. 12 at 13-17) is misplaced, because the parties are bound by an arbitrator's interpretation of ambiguous terms that, on this record, is at least reasonable.

Defendants' argument that the arbitrator lacked authority to decide the issue of attorneys' fees also appears to be a recent invention, now that Defendants find themselves on the losing side of the arbitration award. During their filings to the arbitrator, Defendants not only acknowledged the arbitrator's authority to award fees, but affirmatively sought an award for themselves. In their prayer for relief, Defendants requested:

> Giemme prays that the American Arbitration Association . . . award Giemme all its attorneys' fees, costs and expenses as allowed by the Agreement and applicable law.

(Doc. 16-1 (answer) at 6; Doc. 16-2 (amended answer) at 6.) In Defendants' post-hearing brief, they acknowledged:

> The relevant case law points clearly to the conclusion that Rule 34 will govern the issue of attorneys' fees . . . .

(Doc. 16-3 at 10.)

> Rule 34 should govern the issue[] of whether to award
> attorneys' fees to the prevailing party as part of the
> costs award.

(Id. at 11.)

> Petitioner [Astanza] correctly concludes that Rule 34
> grants the arbitrator discretion to allocate legal costs
> . . . .

(Id.)

> Giemme is not arguing that the arbitrator lacks
> authority to award fees in this case, but is simply
> arguing that the requisite circumstances giving rise to
> a fee award have not been met in this case.

(Id. at 12 n.10.)  And in their response to Astanza's post-hearing

brief, Defendants agreed:

> Article 34, entitled "Costs of Arbitration" give[s] the
> Arbitrator discretion to allocate costs between the
> parties, of which legal fees and expenses are a part,
> "if it determines that allocation is reasonable, taking
> into account the circumstances of the case."

(Doc. 16-4 at 9.)

Not only did the arbitrator have the authority to award

attorneys' fees, therefore, Defendants by their conduct agreed to

submit the issue to him for his consideration.  Kamakazi Music

Corp. v. Robbins Music Corp., 684 F.2d 228, 231 (2d Cir. 1982)

(finding that if the arbitration clause did not encompass

plaintiff's claims, "it is hornbook law" that, by their conduct,

the parties agreed to submit their claim for attorneys' fees to

arbitrator); F. Hoffmann-LaRoche, 730 F. Supp. 2d at 331 (finding that party acquiesced to arbitrator's power to award fees through its request for attorneys' fees in its prayer for relief); InterChem Asia 2000 Pte. Ltd v. Oceana Petrochemicals AG, 373 F. Supp. 2d 340, 354 (S.D.N.Y. 2005) (finding issue properly submitted to arbitrator where both parties requested attorneys' fees in their arbitration submissions). Defendants' attempt to walk back their requests for fees as having been made "perfunctorily" because, they now say, they "believ[ed] at every step that the intent of the parties . . . was to bear their own fees and costs" (Doc. 12 at 10-11 n.7) is, to say the least, unconvincing.

Defendants further argue that, even if the arbitrator had the authority to award fees, he could do so only if he found "exceptional circumstances." (Doc. 12 at 13.) Defendants rely on a misreading of Apache Bohai Corp., which contained a discussion to that effect, but no such requirement. 2005 WL 6112664, at *22-23. Defendants also point to North Carolina law, on which the arbitrator did not rely because he derived his authority from Article 34. (Doc. 3-1 at 14 n.2.) Article 34 provided the arbitrator authority to award fees as part of costs "if [he] determine[d] that allocation is reasonable, taking into account the circumstances of the case." (Doc. 16-14 at 35.) Thus, these grounds are meritless.

Apart from their challenge to the authority to issue a fee award, Defendants also argue that the arbitrator failed to issue a "reasoned award" (Doc. 12 at 8-11), which, if true, could merit an order vacating the award pursuant to 9 U.S.C. § 10(a)(4).[4] Cat Charter, LLC v. Schurtenberger, 646 F.3d 836, 844 (11th Cir. 2011) (discussing district court's discretion to vacate an arbitration award that is not "reasoned," but concluding that arbitrator's decision providing "detailed reasons regarding one claim" to be sufficient). Defendants argue that the arbitrator's award was not "well-reasoned" because he acknowledged he was "clothed with the authority to render an award of attorneys' fees" under the ICDR, reviewed Astanza's evidence, and "simply declared the award 'reasonable.'" (Doc. 12 at 11.)

An arbitration is not a federal court lawsuit, and the resulting award is not a judicial opinion. Indeed, that is precisely why many resort to arbitration. The Supreme Court has held that arbitrators generally need not state reasons for reaching a particular result. United Steelworkers of Am. v. Enter. Wheel & Car. Corp., 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award.").

---

[4] Section 10(a)(4) provides that the district court "may" vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

Parties are free to contract for the level of explanation required. Here, Defendants point to the Representation Agreement's incorporation of the ICDR Rules of Procedure, Article 30 of which requires that the award be in writing and that arbitral tribunal "state the reasons upon which an award is based, unless the parties have agreed that no reasons need be given." (Doc. 16-14 at 33 (Article 30).)[5] Even "[a] reasoned award requirement does not obligate the arbitrator to discuss every single piece of evidence or 'to show how every single proposition [he] adopted could be derived from first principles.'" Carmody Bldg. Corp. v. Richter & Ratner Contracting Corp., No. 08Civ.9633(SHS), 2013 WL 4437213, at *4 (S.D.N.Y. Aug, 19, 2013) (citations omitted). It has been described as providing a standard that is "something short of findings and conclusions but more than a simple result." Sarofim v. Tr. Co. of the W., 440 F.3d 213, 215 n.1 (5th Cir. 2006). Moreover, a failure to give a reasoned award does not always merit vacatur. MCI Constructors, Inc. v. Hazen & Sawyer, P.C., No. 1:02CV396, 2009 WL 632930, at *7 (M.D.N.C. Mar. 9, 2009) ("An award being unreasoned is not a basis for vacatur under § 10(a)(4)," as "awards are generally vacated under § 10(a)(4) only where the arbitrators failed to resolve an issue presented to them or the

---

[5] Of course, Defendants' reliance on the ICDR in this fashion undermines their argument that the Representation Agreement's failure to mention attorneys' fees precludes reliance on ICDR Article 34 for that purpose.

award is ambiguous or unclear." (citations omitted)); see also U.S. ex rel. Coastal Roofing Co. v. P. Browne & Assocs., Inc., 771 F. Supp. 2d 576, 583 (D.S.C. 2010).

The arbitrator easily satisfied the ICDR standard and the FAA here. After a lengthy arbitration process, two days of hearings, and post-hearing submissions, the arbitrator issued a 16-page arbitration award that summarized the facts and addressed the parties' varied contentions on seven different issues. (Doc. 3-1.) As to the attorneys' fee issue, the arbitrator acknowledged his authority under Article 34 to make such an award, noted that all parties had requested attorneys' fees in their pleadings, stated that he understood his authority under Article 34 to render an award as he deemed necessary "considering the circumstances of the case," and noted the record evidence he reviewed in considering the award, which included evidence of attorneys' fees adduced at the evidentiary hearing. (Doc. 3-1 at 14-15.) The arbitrator also observed that Defendants did not argue that Astanza's requested legal fees were "unreasonable or excessive." (Id.) He then concluded that he found the fees to be "reasonable" and "properly supported by affidavit." (Id.) Consequently, he entered an award in the amount of $86,447.10. (Id.)

Overall, the arbitrator recited the facts and issues disputed between the parties (Doc. 3-1 at 2-4), applied established rules

of law in analyzing the facts (id. at 6, 9), and set forth his analysis when concluding that Defendants breached the contract and that Astanza was therefore entitled to recover certain amounts based on evidence of calculable expenses (id. at 4-16). Courts have found "reasoned awards" when assessing similar facts. Rain CII Carbon, LLC v. ConocoPhillips Co., 674 F.3d 469, 474 (5th Cir. 2012) (concluding that the arbitrator gave a "reasoned award" where it "laid out the facts, described the contentions of the parties, and decided which of the two proposals should prevail"); W. Liberty Foods, L.L.C. v. Moroni Feed Co., 1 F. Supp. 3d 951, 956-58 (S.D. Iowa 2014) (finding that arbitration panel's compensatory award of prejudgment interests was a "reasoned award" because it was "mathematically calculable based on fixed losses and other ascertainable variables").

On this record, where Defendants conceded the arbitrator's authority to enter a fee award under Article 34, did not argue that Astanza's fee application was either unreasonable or excessive, and do not contend that the award is unsupported by the evidentiary record before the arbitrator,[6] the sole attack appears

---

[6] This precludes relief under 9 U.S.C. § 11(a), which permits modification or correction "[w]here there was an evident material miscalculation of figures." It also appears to comply even with North Carolina's judicial standard for an award of attorneys' fees. See Aetna Health of the Carolinas v. Piedmont Endocrinology Med. Assocs., P.A., 212 N.C. App. 419, 713 S.E.2d 792, at *6 (2011) (affirming trial court order confirming arbitration award and attorneys' fee award under § 1-569.25(c) where trial court found that the "fees are reasonable based on the information

to be the arbitrator's failure to have provided specific reasons for the exercise of his discretion to award attorneys' fees based on the circumstances of the case. Put another way, Defendants argue that the arbitrator exceeded his powers by "not doing enough." (Doc. 12 at 10 (citing Cat Charter, LLC, 646 F.3d at 843 n.14).) An arbitrator can always provide more, but "had the parties wished for a greater explanation, they could have requested that the Panel provide findings of fact and conclusions of law." Cat Charter, LLC, 646 F.3d at 845. Moreover, it is difficult to see what else should be required under the circumstances. The arbitrator in thirteen pages of decision explained in detail why he ruled for Astanza on virtually every issue.[7] Those were the "circumstances of the case" upon which the award was based. Given the deference due arbitral awards, this surely suffices. Rain CII Carbon, 674 F.3d at 474-75 (refusing to vacate as not "reasoned" arbitrator's award adopting one side's argument, where

---

provided in the affidavit" of plaintiffs' counsel). Importantly here, Defendants, who bear the burden of proof, do not demonstrate that Astanza's supporting documentation of its attorneys' fee request failed to contain the adequate underlying information to support the award.

[7] Issue 1 – rejecting Defendants' lack of consideration argument; Issue 2 – rejecting Defendants' argument that Representation Agreement was too vague and ambiguous as to termination date; Issue 3 – finding Defendants wrongfully terminated Astanza; Issue 4 – rejecting Defendants' contention that Astanza failed to submit invoices to be paid commissions; Issue 5 – awarding commissions to Astanza; Issue 6 – rejecting claim that future commissions were waived, but limiting them to two years of sales; Issue 7 – awarding attorneys' fees to Astanza. (Doc. 3-1.)

arbitrator's decision explained both arguments); <u>Green v. Ameritech Corp.</u>, 200 F.3d 967, 974-76 (6th Cir. 2000) (reversing vacatur of six-page arbitration award on grounds that while minimal, it was nevertheless adequate to satisfy agreement requiring arbitrator to "explain" award).

In summary, the court rejects all of Defendants' arguments and finds that the arbitrator's decision complies with the parties' Representation Agreement, the ICDR's Rules of Procedures, and applicable law, and draws its essence from the parties' contract. The court will not disturb it.

## B.    Motion to Confirm Arbitration Award

Having rejected Defendants' motion to vacate, modify, or correct the arbitration award, the court turns to Astanza's amended motion to confirm the award.[8] (Doc. 3.) Defendants' sole response to the motion was their motion to vacate. (Doc. 10.) The FAA provides that a court "must" confirm an award unless it is vacated, modified, or corrected. 9 U.S.C. § 9 (court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title"); <u>Hall Street Assocs., LLC v. Mattel, Inc.</u>, 552 U.S. 576, 582 (2008) (same). Consequently, the court finds that the arbitration award should be

---

[8] At the December 12, 2016 hearing, the parties agreed the motion was ripe for decision.

confirmed.

### C. Request for Attorneys' Fees for Present Action

Finally, Astanza requests an award of attorneys' fees for its efforts to confirm the arbitration award in this court and to defend against Defendants' motion to vacate, modify, or correct it. (Doc. 3 at 3; Doc. 16 at 16.) Astanza contends it is entitled to an award as part of costs under both North Carolina's Revised Uniform Arbitration Act, N.C. Gen. Stat. § 1-569.25(c), and the court's inherent authority, citing <u>International Chemical Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.</u>, 774 F.2d 43, 47 (2d Cir. 1985) ("As applied to suits for the confirmation and enforcement of arbitration awards, the guiding principle has been stated as follows: 'when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.'" (citation omitted)). (Doc. 16 at 18.)[9] Defendants acknowledge the applicability of the Revised Uniform Arbitration Act but address it only insofar as it permits <u>an arbitrator</u> to exercise his discretion to award attorneys' fees. (Doc. 12 at 14-15.) Otherwise, Defendants maintain that their

---

[9] In its amended motion, Astanza also sought fees under N.C. Gen. Stat. § 1-567.65 – North Carolina's International Commercial Arbitration and Conciliation Act. (Doc. 3 at 3.) Defendants contest the applicability of that act as to Giemme USA, LLC. (Doc. 12 at 14.) Because Astanza has not briefed recovery under this provision and the court finds that North Carolina's Uniform Arbitration Act applies, the court need not reach whether this act provides a basis for a fee award.

opposition to the fee award is not "unjustified." (Doc. 17 at 9.)

Because this action is before the court on the basis of diversity jurisdiction, the court must apply the substantive law of the forum State. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The right to an award of attorneys' fees is considered a matter of substantive law. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975); *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 213 (S.D.N.Y. 2006). North Carolina General Statute § 1-569.25(c) applies to agreements made after January 1, 2004, and provides in relevant part that a

> court may award reasonable attorneys' fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

This provision therefore vests the court with discretion to award attorneys' fees to Astanza associated with the present proceeding unless it is otherwise preempted by the FAA.

The exercise of State authority in a field traditionally occupied by State law will not be deemed preempted by a federal statute absent the clear manifestation of Congress. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157 (1978). Even where a federal statute does displace State authority, it

> rarely occupies a legal field completely, totally excluding all participation by the legal systems of the states . . . Federal legislation, on the whole, has been conceived and drafted on an *ad hoc* basis to accomplish

21

limited objectives.  It builds upon legal relationships established by the states, altering or supplanting them only so far as necessary for the special purpose.

Southland Corp. v. Keating, 465 U.S. 1, 18 (1984) (quoting P. BATOR ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 470–71 (2d ed. 1973)).  "The limited objective of the Federal Arbitration Act was to abrogate the general common law rule against specific enforcement of arbitration agreements."  Southland Corp., 465 U.S. at 18; see S. REP. NO. 68-536 at 2-3 (1924).  Beyond this purpose, there is no clear intent to displace State authority.  Southland Corp., 465 U.S. at 18.  Without a clear mandate from Congress to preempt the field, this court must be cautious in construing the FAA lest it "excessively encroach on the powers which Congressional policy, if not the Constitution, would reserve to the states." Metro Indus. Painting Corp. v. Terminal Constr. Co., 287 F.2d 382, 386 (2d Cir. 1961) (Lumbard, C.J., concurring).

While the FAA does not authorize a district court to award attorneys' fees to a party who successfully confirmed an arbitration award in federal court, Menke v. Monchecourt, 17 F.3d 1007, 1009 (7th Cir. 1994), it also does not displace State law allowing for such awards.  Id. (recognizing two bases for deviating from the rule that each party bear its own fees: (1) statutory authority for fee shifting and (2) contractual agreement between the parties); Harter v. Iowa Grain Co., 220 F.3d 544, 557 (7th

Cir. 2000). Consequently, federal courts have found it consistent with the purpose of the FAA to award attorneys' fees for litigation commenced to confirm or vacate an arbitration award under the FAA, even under their inherent powers. See, e.g., Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron, Div. of Textron, Inc., 688 F.2d 997, 999-1000 (5th Cir. 1982); see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. United Farm Tools, Inc., Speedy Mfg. Div., 762 F.2d 76, 77 (8th Cir. 1985) (per curiam) (holding that an unjustified refusal to abide by an arbitrator's award may constitute bad faith for the purpose of awarding attorneys' fees); Com. Refrigeration, Inc. v. Layton Const. Co., 319 F. Supp. 2d 1267, 1271 (D. Utah 2004) (awarding attorneys' fees while noting that "[w]hile losing an arbitration may be unpleasant . . . the experience is not significantly improved by the instigation of a doomed — and no doubt costly — legal action"). A court may award attorneys' fees "when a party opposing confirmation of [an] arbitration award 'refuses to abide by an arbitrator's decision without justification.'" The N.Y.C. Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc., No. 03 Civ. 5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003) (quoting Int'l Chem. Workers Union, 774 F.2d at 47.)).

Here, the court need not determine whether Defendants' opposition to the arbitration award was "unjustified." Section 1-

569.25(c)'s express allowance for an award of attorneys' fees to Astanza in connection with its efforts to confirm the arbitration award and oppose Defendants' motion to vacate, modify, or correct the award are consistent with the purposes of the FAA and should be given effect. The statute expressly authorizes an award of reasonable attorneys' fees to the "prevailing party." The Uniform Law Comment provided with the statute notes that the provision is designed to "promote[] the statutory policy of finality of arbitration awards" by allowing recovery of expenses and fees to the prevailing party in contested judicial actions precisely like the present and thereby to discourage "all but the most meritorious challenges of arbitration awards." N.C. Gen. Stat. § 1-569.25(c) cmt. 3;[10] see also Aetna Health of the Carolinas, 212 N.C. App. 419, 713 S.E.2d 792, at *6 (affirming trial court order confirming arbitration award and attorneys' fee award based on "prevailing party" status under § 1-569.25(c)).

This is a contested judicial proceeding. And the court finds that Astanza should be awarded its attorneys' fees as the prevailing party. Therefore, the court will grant Astanza's request for reasonable fees associated with the present motions. Because the statute does not provide a basis for an award for

---

[10] The right to recovery of attorneys' fees does not apply where there is "entirely passive" resistance to an award, e.g., where a party simply cannot pay. Id. cmt. 4. That is not the case here.

attorneys' fees related to Astanza's attachment proceedings, however, the award shall not extend to them. Astanza may submit a properly supported application for attorneys' fees for the court's consideration.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' motion to vacate, modify, or correct the arbitration award (Doc. 11) is DENIED; that Astanza's amended motion to confirm the arbitration award (Doc. 3) is GRANTED and that the arbitration award is CONFIRMED; and that judgment be entered in favor of Plaintiff and against Defendants, jointly and severally, in the amount of $165,803.61, plus 8 percent interest as of September 23, 2016.

IT IS FURTHER ORDERED that Astanza's request for an award of reasonable attorneys' fees is GRANTED insofar as it relates to its prosecution of its motion to confirm and its opposition to Defendants' motion to vacate, modify, or correct the arbitration award. Astanza shall file any application for attorneys' fees within sixty (60) days pursuant to the requirements of the applicable rules and law, including this court's local rules. L.R. 54.2.

/s/ Thomas D. Schroeder
United States District Judge

December 15, 2016